# THE STATE v. MARTIN, Alias RED, KING, Appellant.

### Division Two, November 24, 1908.

1. **ROBBERY: Circumstantial Evidence.** Robbery may be established by circumstantial evidence; and the evidence in this case is reviewed and held to clearly establish that defendant and an accomplice robbed deceased, and assaulted him, and inflicted upon him the wounds from the effects of which he remained in a dazed condition till his death twelve days later.

2. ————: **Recent Possession** of the watch worn by the deceased victim of the robbery affords strong and reasonable ground that the party in whose possession it was found committed the robbery, unless he can account for such possession in some way consistent with his innocence.

3. ————: ————: **Admission.** And such presumption arising from recent possession is greatly strengthened by voluntary admissions from the possessor that he and another held up the owner.

4. ————: **Death of Victim: Referred to by Counsel.** Where the wife of the victim of the robbery had testified that he had come home badly wounded and in a dazed condition and so remained until his death twelve days later, it was perfectly competent for the State's attorney to allude to his death in his argument to the jury in the robbery case, and thereby account for his absence as a witness by referring to this testimony.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

Affirmed.

*Henry M. Walsh* for appellant.

The main contention in this case is that there is no evidence of any character to show that the person named in the information, John Huppert, had ever lost anything by violence to his person or by putting him in bodily fear.   The statements which are alleged to have been made by the defendants to some other persons do not show that a robbery was committed.   The coming home of Huppert, with his clothing torn and dirty, some of his property missing, does not indicate that he lost his property by reason of any violence.   He might have lost his property as the result of an accident, many different ways might have been suggested as to the exact method in which he secured the torn trousers pocket, the dusty hat and clothing, but there is no word of any kind from Huppert to show that the loss of his property was at any time or in any way involuntary, without his consent. There was no witness to say when and where Huppert parted with his property, if at all.   If this contention be right then there is nothing to this case.   That is, if it is necessary to show in a case of first degree robbery, the elements of violence or putting a person in fear of violence, an actual taking of property of another forcibly, without the consent of the prosecutor, then there is nothing in this case which should have been permitted to go to a jury.

*Herbert S. Hadley,* Attorney-General, and *F. G. Ferris,* Assistant Attorney-General, for the State.

(1)   Circumstantial evidence tending to prove that the crime had been committed was properly admitted.   4 Elliott on Evidence, sec. 2708.   Circumstantial evidence and evidence of attendant circumstances was properly admitted to prove that defendant committed the crime. 4 Elliott on Evidence, secs. 3029, 3133, 3134.   (2)   The court did not err in permitting

the circuit attorney to comment on the death of Huppert, the victim of the alleged robbery.   The remarks of the circuit attorney complained of were based upon the testimony of Eugenia Huppert, to the effect that Huppert, from the time of the alleged robbery, was weak from loss of blood, and was in a dazed condition for about twelve days and until he died.   That testimony was admitted without objection from defendant. In view of the meager and incomplete remarks of the circuit attorney, and the comment and rulings of the court thereon, defendant could not have been in any manner prejudiced by said remarks.   In order to justify a reversal of the judgment, it should appear to the court that the remarks complained of were prejudicial to defendant, and probably had something to do in bringing about the conclusion reached by the jury.   State v. Church, 199 Mo. 638; State v. Hibler, 149 Mo. 484.

GANTT, J.—The prosecution of this case was begun April 24, 1907, by information filed by the assisttant circuit attorney in the circuit court of the city of St. Louis, charging that the defendant and Albert Kapp on the 6th of April, 1907, at the city of St. Louis, feloniously committed an assault in and upon one John F. Huppert, and by force and violence to his person did rob, steal, take and carry away one gold-filled American Waltham watch, one gold-filled watch chain, one Royal Arcanum charm, one pocket knife, one pocketbook and thirty-five cents in money, all of the value of fifty dollars, from the person of the said John F. Huppert, and against his will, with the intent then and there to deprive him of the use thereof and to convert the same to their own use.

The defendants were duly arraigned and pleaded not guilty, and on the 27th day of May, 1908, were

214 Sup.—25

tried before a jury, and each was found guilty and the punishment of each assessed at imprisonment in the penitentiary for twenty years. . In due time the defendants filed their motions for new trial, which were overruled, and thereupon the court reduced the punishment of the defendant King to ten years in the penitentiary and sentenced him accordingly, and from that judgment he appeals to this court.

The testimony introduced by the State tended to show that John F. Huppert was a barber residing at 1423 Blair avenue, and working at 2219 N. Broadway in St. Louis. At about 6 o'clock on the morning of Saturday, April 6, 1907, Huppert left his home for his place of business. He was wearing at the time his gold watch and chain and charm, and carried his pocket knife, finger nail trimmer, pocketbook and small change. At about 11:45 that night he returned home in a very bad condition; over his right eye was a deep cut as if made by a blunt instrument, his eye was swollen, his face bruised, he was bleeding profusely at the nose and mouth, and his clothes were covered with dust, dirt and blood, and one of his pockets was torn. He was very weak from loss of blood and was in a dazed condition, in which he remained for about twelve days, when he died. His watch and chain and the other articles named were gone and the pocket that was torn was bloody. About one hundred and fifty or two hundred feet from Huppert's residence on the route of his usual travel to and from his place of work, was an alley opening into Blair avenue. At a point in said alley, at its entrance from Blair avenue, was found a short time after Huppert's return home that night, a pool of blood and from this point to his home was a trail of blood. About ten feet from the pool of blood in the alley was found a piece of his watch chain. It further appeared in evidence that at Fourteenth street and Cass avenue, about one block and a half

from the said alley at Blair avenue, was a warehouse and wagon and coal yard, where, on the night of the said 6th day of April, 1907, a number of boys and young men, among them George Harris, Joseph Wallace, James Miller, Peter Niesen, the defendants, Albert Kapp and Red King, were congregated and engaged in drinking beer. About 11:30 that night Kapp and the defendant King left their companions at that place and were gone about twenty minutes, returning just before midnight, out of breath, excited and with their clothes mussed up. Upon being asked by Niesen, one of the said party, as to what was the matter, one of them said it was none of their business, and to the same inquiry put by another companion they replied that they had held up a man on Blair avenue and got a watch off of him, and they were going out before they got arrested. Niesen testified, "They came back and said that they had a watch and thirty cents, and they had better pull out before the cops got them," and, "Then they said they stuck up a fellow at Blair and Cass and got thirty cents and a watch." Niesen testified that it was his impression that it was Kapp who did this talking, and Miller, another of the party, thought that it was the defendant King that did the talking. Harris testified: "I remember Kapp coming in and he said he had held up a fellow on Blair and Cass avenue for a watch." About 12 o'clock, the defendants Kapp and King being in the act of taking their leave of the party, two officers approached and they all ran. The officers arrested four of the associates of the defendants and recognized and called to the defendant King as he took his flight. Up to that time, the officers had not heard of the assault upon and the robbery of Huppert. The defendant Kapp on being arrested, a few days later, said that on Saturday night after nine o'clock, he was

too drunk to know where he was or what he was doing.

About 5:30 o'clock in the afternoon of Sunday, the next day, William Meyers and Charles Miller met the defendant, King, on the street, and Meyers asked King who held up Huppert, and he replied that he and Kapp did.   The defendant King requested Meyers to meet him at 7:30 o'clock that afternoon when he would give Meyers Huppert's watch, which he then had at his home, to take to Huppert and say nothing.   At the appointed hour Meyers met King and received from him Huppert's watch, which he took to Huppert's house and delivered to Huppert the next morning. King also told Meyers and Miller that the holdup occurred on Blair avenue.

Mrs. Huppert, corroborated by her daughter, testified that two men giving their names as Murphy and Miller brought her husband's watch back to him at his home on Monday morning, April 8th, and they also brought fifty dollars to Huppert and had him sign a little note that he was mistaken in the man Miller, that Miller was not the man who had held him up.   The watch and chain were introduced in evidence.

At the close of the evidence, the defendants moved the court to direct the jury to acquit them, but this motion was overruled and the defendants offered no evidence.   The court instructed the jury on the offense of robbery in the first degree, upon reasonable doubt, circumstantial evidence, presumption of innocence and the credibility of witnesses.   As the only objection to these instructions was that they did not cover all the law applicable to the case, and as they are not now challenged in this court by counsel for the defendant, we deem it unnecessary to burden this statement with them.   It is sufficient to say that after a careful examination of them, we can discover no error in them.

The main and practically only contention on this appeal is that there is no evidence in the record to show that Huppert, the deceased, had ever lost anything by violence to his person, or by putting him in deadly fear. In a word it is insisted that as there was no eye-witness to the alleged robbery and no person present who testified that Huppert was deprived of his property by force and violence to his person, it is impossible to infer that he was deprived of his said property without his consent and by force and violence. As above indicated the absence of Huppert's testimony was accounted for by the fact that he died about twelve days after the said assault and robbery from the injuries he received that night; and that he made no dying declaration identifying the defendant as the perpetrator of the robbery, is not strange when the evidence shows that from the time he reached his home that night until his death, twelve days later, he was in a dazed condition. That robbery as well as other crimes may be established by circumstantial evidence is not questioned, and that the evidence in this case established the guilt of both of the defendants, it seems to us cannot admit of a reasonable doubt. When last seen prior to the assault and robbery Huppert was in his usual health and had upon his person his watch and chain and Royal Arcanum charm and his pocketbook with some small change in it. When he returned home that night by the usual route, he was discovered in a dazed condition of mind and weak from the loss of blood occasioned by fresh and severe wounds upon his head, his clothes were disheveled and covered with dirt and blood and his money, watch, watch chain and charm were gone, a trail of blood led back from his home to the mouth of the alley, where there was a pool of blood, and at this place was found a piece of his watch chain. Indeed there was every indication of a felonious and violent

assault upon him and that his assailants were the two defendants was -evidenced by their possession of the property, the next day, which he was wearing upon his person at the time of the assault.    In State v. Kelly, 73 Mo. l. c. 614, this court quoted with approval the language of Wills on Circumstantial Evidence, 64, as follows:    ''Since the desire of dishonest gain is the impelling motive to theft and *robbery,* it naturally follows that the possession of the fruits of crime, recently after it has been committed, affords a strong and reasonable ground for the presumption that the party in whose possession they were found was the real offender, unless he can account for such possession in some way consistently with his innocence.''    This doctrine has been uniformly announced by this court both before and since the decision in State v. Kelly, supra.

But this judgment does not rest upon the presumption of guilt from the possession merely of the stolen goods, but that presumption is strongly corroborated by the admissions and statements of the defendant himself immediately after the commission of the robbery in which he and Kapp stated that they had held up a fellow on Blair and Cass avenue, for a watch, and their further statements that they were going to leave before they were arrested.    But the most damaging testimony against the defendant was that of William Meyers, who testified that he had known both Kapp and the defendant King for five years, and that on April 7th, the next day after the robbery, the witness and one Miller were together and met the defendant King on 14th street and Cass avenue in St. Louis about half past five in the afternoon.    This witness identified the watch in evidence as one which the defendant King had handed to him on April 7th, the day after the robbery.    He testified that King, the defendant, requested him to come to King's residence about half past seven, and he would give him the watch

to take to Huppert and requested him to say nothing, and that he went to the place and the defendant gave him the watch, which was identified as the property of Huppert, and that he took this watch to Huppert the next Monday morning. And this evidence was corroborated by Charles Miller. These witnesses also testified that the defendant told them that he and Kapp had held up Huppert. In view of all of this evidence, it seems to us that there is little merit in the contention that there was failure of proof as to the commission of the offense of robbery in the first degree. On the contrary, we think the testimony was overwhelming as to the guilt of both the defendant and Kapp.

As to the complaint that the State's attorney was guilty of improper conduct in alluding to the death of Huppert in the course of his argument, there is no merit whatever. Mrs. Huppert had testified that her husband had come home that night in a dazed condition and had remained in that condition until his death twelve days later. It was perfectly competent for counsel to account for the absence of Huppert as a witness by referring to this testimony. It was in the record without any objection, and if any had been made it would have been properly overruled.

The defendant, in our opinion, had a fair and impartial trial, and every essential element of the crime of robbery in the first degree was established by the evidence beyond a reasonable doubt.

The judgment must be and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.